1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4

5

6     **ANTONIO VELAZQUEZ  PEREZ**

7       **Plaintiff**

8       **v.**                                   **Civil Action No. 10-1002 (GAG)**

9     **DEVELOPERS DIVERSIFIED REALTY**

10     **CORP.; DDR PR VENTURES II LLC**

11       **Defendants.**

12

13

14                                       <u>**OPINION AND ORDER**</u>

15       Antonio Velazquez Perez ("Plaintiff") brings this action against Developers Diversified

16 Realty Corp. and DDR PR Ventures II LLC ("DDR" or "Defendants"), alleging sexual harassment[1]

17 and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§

18 2000e *et seq.* Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate claims

19 under Puerto Rico state laws: Laws Number 100 and 17, P.R. Laws Ann. tit. 29, §§ 146 et seq., §§

20 155 et seq., respectively; and Puerto Rico Law 69, P.R. Laws Ann. tit. 29, §§ 1321 et seq., and Law

21 No. 80 of May 30, 1976, as amended ("Law 80"), P.R. Laws Ann., tit. 29, § 185a *et. seq.*

22       This matter is currently before the court on defendants' motion for summary judgment.

23 (Docket Nos. 58, 59). Plaintiff opposed defendants' motion for summary judgment. (Docket No.

24

25

26        [1] Plaintiff's complaint seems to be severing his sex discrimination and sexual harassment

27 claims. Nevertheless, a reading of the complaint and the opposition to the motion for summary
judgment reveal that the basis of plaintiff's sex discrimination claim is the acts that allegedly

28 constituted sexual harassment. Accordingly, the court will examine Plaintiff's sex discrimination
claim solely in the form of harassment.

**Civil No. 10-1002 (GAG)**                    2

75).  By leave of the court, Defendants filed a reply brief (Docket No. 90) and a motion to strike (Docket No. 91) alleging that Plaintiff's opposition was supported by a "sham affidavit" that contradicted his prior deposition testimony and should therefore, be stricken from the record. Plaintiff sur-replied (Docket No. 112).   The court issued an order (Docket No. 131) striking the affidavit in question from the record (Docket No. 75-2) and instructing Plaintiff to resubmit an opposition to Defendants' motion for summary judgment which did not refer to information contained on the stricken affidavit. In compliance with the court's order, Plaintiff resubmitted its opposition and the amended responses and objections to Defendants' statement of uncontested facts (Docket No. 132).   Defendants' replied to Plaintiff's amended responses and objections (Docket No. 145) and filed a reply memorandum to Plaintiff's opposition (Docket No. 146).   Plaintiff filed motions requesting leave to file a sur reply (Docket Nos. 150 and 151).   The court will not consider Defendants' reply, and therefore, will also not consider Plaintiff's surreply.   After reviewing the pleadings and pertinent law, the court **GRANTS** Defendants' motion for summary judgment.

## I.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds

**Civil No. 10-1002 (GAG)**                                    3

that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Relevant Factual & Procedural Background

Plaintiff filed a complaint (Docket No. 1) against DDR in which he alleges that he was sexually harassed by his co-worker Rosa Martinez ("Martinez"), regional property accountant and human resources liaison for Puerto Rico.  He also alleges that, after complaining of sexual harassment, he became a victim of retaliation by Martinez and Rolando Albino ("Albino"), his supervisor.  Defendants filed a motion for summary judgment (Docket No. 59) and a statement of uncontested material facts in support of motion for summary judgment ("SUMF") (Docket No. 58-1) in which they contend that Plaintiff has failed to establish the key elements of sexual harassment both quid pro quo and hostile work environment.  In addition, Defendants argue that Plaintiff's retaliation claim is time-barred or in the alternative, Plaintiff has failed to establish a causal connection between any alleged protected activity and the alleged adverse employment action. (See Docket No. 59 at 2.)  Furthermore, regarding Plaintiff's claims under the constitution of the United States of America, Defendants argue that it fails as a matter of law inasmuch as the complaint is devoid of any facts that would even hint at a finding of state-sponsored behavior.

The court finds that according to the record the following material facts exposed by

**Civil No. 10-1002 (GAG)** 4

Defendants have not been controverted.  Plaintiff started working at DDR on June 1, 2007, as operations manager of three shopping center properties operated and managed by DDR.   DDR is the owner, manager and developer of an international portfolio of shopping centers.  It operates and manages fifteen shopping centers in Puerto Rico.  Plaintiff was the operations manager of the Rio Hondo shopping center (located in Bayamon, Puerto Rico), Plaza Vega Baja (located in Vega Baja, Puerto Rico) and Rexville Plaza (located in Bayamon, Puerto Rico).

Plaintiff stated in his deposition that during his employment at DDR, he reported to Rolando Albino ("Albino"), regional operations manager for Puerto Rico.  Albino in turn, reported to Francis Xavier Gonzalez ("Gonzalez"), vice-president property management for Puerto Rico.  (See Docket No. 58-3 at 50 L. 25, and at 64 L. 4-12.)  Plaintiff testified that Martinez was not above him in the organizational chart.  (See Docket No. 58-3 at 53 L. 5-15.)   While working as an operations manager, Plaintiff's office was located at the Rio Hondo shopping center in Bayamon, together with Gonzalez, Albino and Martinez.  (See Docket 58-3 at 51 L. 1-7.)  Plaintiff's relationship with Albino, Martinez and Gonzalez was extremely good while he held the position of operations manager.  (See Docket No. 58-3 at 66 L. 3-7.)

Approximately 4 or 5 months after Plaintiff began working for Defendants, a position for regional general manager became vacant.  Plaintiff approached Albino and Martinez regarding his interest in that position and they, in turn, recommended Plaintiff to Gonzalez.  Gonzalez had qualms about promoting Plaintiff to this position because of his limited experience in managing shopping centers and because he had not been trained in budget issues and financial reports.  (See Docket No.58-3 at 56 L. 23-25 and 57 L. 1-3.)  However, on November 1, 2007, Plaintiff was promoted to the position of regional general manager.  He was responsible for overseeing the eastern region properties in the island which were comprised of the following shopping centers:  Plaza Palma Real in Humacao, Plaza Fajardo, Plaza Cayey and Wal-Mart in Guayama.  (See Docket No. 58-1 ¶ 16.)

Plaintiff stated in his deposition that it was Martinez who trained him in the financial aspects of his new position and that she was very helpful in the process.  (See Docket No. 58-3 at 57 L. 6-9

**Civil No. 10-1002 (GAG)**                          5

and L. 19-24.)  He also asserted that Martinez showed him how to prepare monthly reports that he was supposed to submit.  As part of the promotion, his annual salary was increased from $35,000 to $45,000 and he became eligible to participate in the performance bonus program, like the other regional managers.  Plaintiff declared that as regional manager, his immediate supervisor was Albino and that the only positions that were above his in the operational chart were those of  Albino's and Gonzalez'.  (See Docket No. 58-3 at 64 L. 4-6.)

Once Plaintiff was promoted, he was relocated to a new office in Plaza Palma Real in Humacao while Martinez, Gonzalez and Albino remained in the central office in Rio Hondo.  (See Docket No. 58-3 at 67 L. 12-16 and at 68 L. 11-20.)  Plaintiff was no longer required to report to the Rio Hondo central office on a daily basis.  (See Docket No. 58-3 at 75 L. 11-13.)  Plaintiff would go to the central office if Gonzalez had scheduled a meeting with the regional managers or if he needed assistance from Martinez regarding budget planning and financial reporting.  (See Docket No. 58-3 at 75 L. 6-9.)

When Plaintiff was promoted to the position of regional management, Gonzalez required him to move closer to his new office in Humacao, in the eastern part of Puerto Rico,   because he lived in the northern part of the island in Toa Baja. Gonzalez stated, under penalty of perjury, that he requested Plaintiff to move, because in his experience managers "who have better engagement and control over their regions live close to the properties they are managing".  (See Docket No. 58-4 at ¶ 15.)  Gonzalez further stated that when a regional manager lives  closer to the region, travel time is reduced which  allows the manager to arrive earlier and stay later at the region should an emergency situation occur.  (See Docket No. 58-4 at ¶ 15.)  Gonzalez stated  that although Plaintiff agreed to move when he was promoted, he never did.  (See Docket No. 58-4 at ¶ 15.)

Gonzalez prepared Plaintiff's performance appraisal for the year 2007.  The overall rating of his performance appraisal was "meets expectations".  Gonzalez discussed this performance evaluation with Plaintiff in March, 2008.  (See Docket No. 58-3 at 120 and Docket No. 58-4 ¶ 16.)  Martinez did not evaluate Plaintiff's performance. (See Docket No. 58-3 at 177.)  It was González who made the

**Civil No. 10-1002 (GAG)**                                6

decisions regarding Plaintiff's employment benefits.  (See Docket No. 58-3 at 196.)  On March 16, 2008, Plaintiff received another increase in his annual salary from $45,000 to $60,000. (See Docket No. 58-4 at 24.)  Plaintiff stated at his deposition that he had "high regards" for Gonzalez and that Gonzalez was a "gentleman".  (See Docket No. 58-3 at 295.)

In March, 2008, after meeting with Plaintiff for his performance appraisal Gonzalez declared that he received reports on Plaintiff's tardiness and absenteeism.  As a result Gonzalez met with Plaintiff to discuss these concerns and encouraged Plaintiff to show up at work and to move closer to his region.  (See Docket No. 58-4 ¶ 17.)  In June 2008, González found out that Plaintiff had engaged in a transaction of a financial nature with a contractor and had failed to report it to the Company. As part of the situation, Martinez and Albino met with the contractor and it was discovered that the car Plaintiff was  driving was under the contractor's company name.   The contractor continued to pay the car and Plaintiff reimbursed him. Gonzalez stated in a sworn statement that this action constituted a conflict of interest, in violation of Defendants' code of professional conduct and ethics.  (See Docket 58-4 at 4 ¶ 18.)  Plaintiff acknowledged receipt of this policy.  (See Docket no. 58-3 at 200.)

On August 14-15, 2008, a power outage took place at the Plaza Fajardo shopping center.  The outage was caused by the personnel engaged in the construction of a new store in that shopping center, which left fourteen stores without power for almost thirty consecutive hours.  (See Docket No. 58-3 at 201 and Docket No. 58-7 at ¶ 10.)  This incident was considered an emergency and required special handling as outlined in DDR's Crisis Response Manual. (See Docket No. 58-6 at 21 ¶ 10.)  Plaintiff received a disciplinary warning dated August 16, 2008 for his lack of diligence in handling the emergency.  (See Docket No. 58-7 at 11-12.)  Although Plaintiff was asked to prepare the required Critical Incident Report in relation to the emergency situation, he never did, nor did he update Albino or González on the outcome of the situation.  (See Docket No. 132-3 at 215 L.13-14.)

On August 20, 2008 Gonzalez and Albino conducted an independent investigation and met

**Civil No. 10-1002 (GAG)**                              7

with Plaintiff's staff at Plaza Palma Real.  Plaintiff's staff provided information which revealed that Plaintiff continued to breach Defendants' attendance and punctuality policies by regularly arriving late or not coming to work at all.  (See Docket 58-4 at 4 ¶ 20.)  These policies are outlined in  DDR's Employee Handbook.  (See Docket No. 58-7 at 7.)  As a result of the meeting with Plaintiff's staff and the information obtained regarding Plaintiff's performance, González conferred with Diane Kaufman, Director of Employment and Employee Relations, Nan R. Zieleniec, Senior Vice-President of Human Resources, and John S. Kokinchak, Executive Vice-President - Property Management, to discuss the findings and determine the course of action to follow regarding Plaintiff's employment. They all approved Plaintiff's termination based on the information obtained so far, but granted González the prerogative to meet with Plaintiff and decide whether to terminate his employment or place him on a performance improvement plan.  (See Docket No. 58-4 at ¶ 27 and Docket No. 58-8 at ¶ 4.)

On August 25, 2008, González and Albino met with Plaintiff at the Río Hondo office.  (See Docket No. 58-4 at ¶ 28.)  At the meeting, González asked Plaintiff at what time he was normally reporting to work and Plaintiff answered that he was reporting every day between 8:30 a.m. and 9:30 a.m., in total contradiction to the information previously provided by his staff.  (See Docket No. 58-4 at ¶ 28.)  González terminated Plaintiff at that meeting for giving him false information regarding his attendance and punctuality and also due to the questionable business practices brought forth by his staff during the investigation, some of which were corroborated by Albino. (See Docket No. 58-4 at  ¶ 28.)  González explained to Plaintiff that he was terminated for his attendance and punctuality problems.  (See Docket No. 58-3 at 183 L.10-10-13.)

Plaintiff filed a discrimination charge before the Equal Employment Opportunity Commission on February 26, 2009, alleging sex discrimination and retaliation.  (See Docket No. 58-8 at 27.)  In the charge Plaintiff included a sworn statement where he alleged that Martinez sexually harassed him and created a hostile work environment.

**III.    Discussion**

Civil No. 10-1002 (GAG)                              8

### A.      Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1). "Harassment on the basis of sex is a violation of . . . [T]itle VII.[2]   Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment . . . ." 29 C.F.R. § 1604.11 (2010).   Sexual harassment constitutes sex discrimination prohibited by Title VII.   Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 472 (1st Cir. 2002). There are various types of actionable sexual harassment claims under Title VII:   hostile work environment claims, *quid pro quo* harassment claims and retaliation claims.   See Valentin-Almeyda v. Muncipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006).

### 1.      Sexual Harassment Claims

### a.      Hostile Work Environment

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.   See Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007) (internal citations and quotations omitted).   A Title VII hostile work environment claim exists where a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"   Harris v. Forklift Sys., 510 U.S. 17, 21

---

[2] Puerto Rico Law 17 prohibits sexually harassing behavior in employment.   It defines it as a form of sexual discrimination that constitutes an illegal and undesirable practice.   See P.R. Laws Ann. tit. 29, § 155.   When assessing claims under Law 17, the same exacting standard that is applied to Title VII claims is employed in Puerto Rico courts in establishing the existence of a hostile work environment.   See Sanchez et al. v. A. E. E., 1997 WL 878520 (P.R.); Rodriguez Melendez v. Supermercado Amigo, Inc., 1990 WL 657444 (P.R.)

Civil No. 10-1002 (GAG)                    9

(1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  In order to state a prima

facie case of hostile work environment under Title VII a plaintiff must show the following:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to
> unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that
> the harassment was sufficiently severe or pervasive so as to alter the conditions of
> plaintiff's employment and create an abusive work environment; (5) that sexually
> objectionable conduct was both objectively and subjectively offensive, such that a
> reasonable person would find it hostile or abusive and the victim in fact did perceive
> it to be so; and (6) that some basis for employer liability has been established.

Forrest, 511 F.3d at 228 (quoting Crowley v. L.L.Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

Defendants contend that Plaintiff fails to establish at least the second, fourth, fifth and sixth elements

of the *prima facie* case.  The court examines the above mentioned elements in light of the record[3]

**Unwelcome Sexual Harassment**

        To determine whether conduct is "unwelcome," it is permissible to examine the victim's

actions. "The correct inquiry is whether respondent by her conduct indicated that the alleged sexual

advances were unwelcome." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986).  Defendants

allege that Plaintiff can not establish that he was subjected to unwelcome sexual harassment.

        Plaintiff admitted at his deposition that his relationship with Martinez, Albino and Gonzalez

was really good while he was operations manager.  (See Docket No. 58-3 at 66 L. 3-10.)  Plaintiff also

testified that Martinez and him had a relationship in which they would joke with one another and  talk

about personal matters.  (See Docket No. 58-3 at 180 L. 20-22 and at 230 L. 17-19.)  They exchanged

a lot of emails, even after 11:00 p.m., and also talked on the phone a lot. (See Docket No. 58-3 at 177

and at 178 L. 1-2.)  Plaintiff admitted in his deposition that there were "double entendre" words in

the emails he sent to Martinez.  (See Docket No. 58-3 at 229 L. 11-20 and at 231 L. 3-20.)  For

instance, on November 14, 2007, Plaintiff sent an email to Martinez saying:  "You know you need

to stay close by and be accessible.  If not, what would happen to me?".  (See Docket No. 70-2 at 47.)

On November 27, 2007, Plaintiff sent an email to Martínez saying: "You had me worried, I thought

---

        [3]The court need consider only the cited material, but it may consider other materials in the
record. See Fed.R.Civ.P. 56(c)(3); Loc. Rule 56(e).

**Civil No. 10-1002 (GAG)**                    10

you didn't like me anymore!!!!!" (See Docket No. 70-2 at 49.) On November 29, 2007, Plaintiff sent an email to Martínez stating: "The difference between thermometer and thermostat is, the first changes with the temperature that surrounds it and the last changes the temperature that surrounds it. Are you thermometer or thermostat?" (See Docket No. 58-5 at 3.) On a string of emails dated December 12, 2007, Plaintiff wrote to Martínez: "Come on, no jabs on the genitals allowed" (See Docket No. 70-3 at 2.) and "That was right on the nuts!!!!". (See Docket No. 70-3 at 1.) On December 21, 2007, Plaintiff wrote on an email to Martínez the following: "That's because what's really needed is a good fuck." (See Docket No. 70-3 at 6.) On a string of emails dated February 2, 2008, Plaintiff stated to Martínez: "I love you lots, sweetie." (See Docket No. 70-3 at 8.) "Treasure me, protect me, I will do the same with you." (See Docket No. 70-3 at 8.)

On April 13, 2008, Plaintiff sent an email to Martínez stating: "You know that I will not reject anything that you feel it in your heart to give me." (See Docket No. 70-3 at 13.) On April 23, 2008, Plaintiff forwarded a message to Martínez titled: "A Kiss for you! (You'll love this) Better than you probably expect." The message ends up saying: "All you gotta do is send this to your favorite buddies. It's adorable so pass it on :-) It's a cute way to make a friend smile :-D. You've been Kissed! Muuuuahhhhhhh." (See Docket No. 58-5 at 14-17.)

On several occasions, Plaintiff sent Martinez emails where he acknowledged the crucial role she had on his career and also thanked Martínez for giving him support. (See Docket No. 58-5 at 21.) "Everything you have been sharing with me has been very valuable. All this is becoming a great part of my formation in the industry. Keep it up and with God's help, I will never let you or DDR down." (See Docket No. 70-4 at 3.) At one point in his deposition Plaintiff stated that everything he learned about the financial aspect of the industry, which in his appreciation is the most important one, came directly from Martinez. (See Docket No. 58-3 at 232 L.9-13.)

The record shows that Plaintiff and Martinez had the type of relationship where they both shared details about their personal lives and most significantly they exchanged emails that were sometimes flirtatious, used vulgar language, had sexual content and were not work related. Plaintiff

**Civil No. 10-1002 (GAG)**                              11

did not controvert these facts. As a result, Plaintiff fails to demonstrate that the sexual harassment was unwelcome.

### Harassment was Sufficiently Severe or Pervasive

The First Circuit Court of Appeals has explained that the finding of a hostile work environment "does not depend on any particular kind of conduct" and "that [t]here is no precise formula for establishing sufficiently egregious conditions." Perez Cordero v. Wal–Mart Puerto Rico, Inc., 656 F.3d 19, 29 (1st Cir.2011). A court must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Valentin Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir.2006).

The standards for judging hostility are sufficiently demanding "to ensure that Title VII does not become a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted). "[Title VII] forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The Supreme Court has clarified that "conduct must be extreme to amount to a change in the terms and conditions of employment." Id. "[T]he law does not address every discomfort and offense suffered in the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 883 (1998).


Defendants contend that Plaintiff is unable to establish that the alleged harassment was sufficiently severe or pervasive. Furthermore, Defendants allege that Plaintiff contradicted himself more than once during the deposition when asked about the instances in which he was sexually harassed. Plaintiff stated in his deposition that there were basically two incidents in which he was sexually harassed by Martinez; one in April, 2008 and one in August, 2008. (See Docket no. 58-3

**Civil No. 10-1002 (GAG)**                               12

at 160 L. 1-2 and at 167 L. 11-20.)  Plaintiff also stated that the sexual harassment stopped in two

different dates; he declared that it had stopped in April, 2008 and he also stated that it stopped in June

2008.  (See Docket No. 58-3 at 181 L. 7-13 14-19.)

According to Plaintiff's deposition the first sexual harassment incident took place in April,

2008 during a managers' meeting in the U.S.  Allegedly, Plaintiff had just had dinner at the hotel

lobby restaurant with a group of managers from the meeting including Martinez.  (See Docket No.

58-3 at L. 5-9.)  After dinner, Plaintiff walked up to his hotel room with two women.  Plaintiff knew

one of these women because she had worked with Defendants in P.R., and the other woman was a

manager from Florida.  The woman from Florida entered her room and as he has walking down the

hallway with the other woman towards her room, Martinez appeared and questioned what they were

doing together.  Next, Martinez started emailing them, telling them to have fun and do whatever they

want. When Plaintiff returned to his room, Martinez allegedly stood by the door.  Plaintiff asked her

to leave and she left.  (See Docket no. 58-3 at 139 L. 6-25 and 140 L. 1-10.)

The second hostile environment incident, according to Plaintiff took place in August, 2008,

a week before Plaintiff was terminated, during a training in the U.S., mainland.  (See Docket No. 58-3

at 167 L. 11-20.)  Plaintiff was going up to his hotel room and allegedly Martinez got into the elevator

with him with the intention of going up to Plaintiff's room.  Plaintiff told her not to follow him and

she desisted.  (See Docket No. 58-3 at 167 L.16-19.)  Plaintiff stated that at that time Martinez did

not ask him to have sexual relations with her.  (See Docket No. 58-3 at 168 L. 23-25 and at 169 L.

1.)

Defendants contend that these two isolated incidents could be termed as at most

unprofessional, impertinent or annoying, but they are not sufficiently severe or pervasive so as to alter

the conditions of Plaintiff's employment.  (See Docket No. 59 at 25-26.)  The court agrees.

The record shows that Plaintiff contradicted himself during his deposition and was vague

regarding the instances in which he was allegedly harassed. He was never able to answer during the

deposition the specific occasions when Martinez asked him to have sexual relations with her. Plaintiff

answered that there were several emails where Martinez asked him to have sexual intercourse;

**Civil No. 10-1002 (GAG)**                    13

however, Plaintiff did not submit any of the alleged emails for the record.  In the motion for summary judgment Defendants allege that they performed an exhaustive search in Defendants' email server and were not able to locate any of the alleged emails.  (See Docket No. 58-8 at 33 ¶¶ 5,6.)

In addition, Plaintiff and Martinez stopped working at the same office when Plaintiff became regional general manager, in November, 2007.  As a result, Plaintiff had very little face contact with Martinez.  (See Docket No. 58-3 at 176 L.13-17.)  After November, 2007, Plaintiff's interaction with Martinez was on a monthly basis when they had manager meetings and reporting periods, because his new office was located in Plaza Palma Real in Humacao and Martínez remained at the central offices in  Plaza Río Hondo, in Bayamón.  (See Docket No. 58-3 at 176 L.19-23.)  Furthermore, Plaintiff declared at the deposition that the sexual harassment had stopped shortly after the April,2008 incident.

In sum, Plaintiff and Martinez did not work at the same office in April, 2008, when Plaintiff stated in his deposition that the harassment started.  In fact, at that point in time Plaintiff and Martinez had been working in different offices since he was promoted as regional operations manager in November, 2007.  If Plaintiff and Martinez were working in different shopping centers in April, 2008 when, according to Plaintiff,  the harassment started, then it is not possible for Martinez to have created an objectively abusive work environment at Plaintiff's place of work.  During the one or two months period that Plaintiff was allegedly sexually harassed there were only two incidents that took place in conventions celebrated in the U.S.  And according to Plaintiff's deposition the harassment stopped shortly after the April,2008 incident.

Based on the totality of the circumstances the court concludes that Plaintiff has failed to establish that the alleged harassment was sufficiently severe or pervasive that it altered the conditions of his employment nor that the harassment was objectively abusive.  Plaintiff did not establish the elements of a prima facie case of hostile work environment.  For this reason, the court **GRANTS** Defendants' motion for summary judgment as to the Plaintiff's hostile work environment sexual harassment claim.

**b.**     ***Quid Pro Quo* Sexual Harassment**

Civil No. 10-1002 (GAG)                    14

*Quid pro quo* sexual harassment also violates Title VII. In this form of harassment, "an employee or supervisor uses his or her superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir.2006).

In order to make a claim for *quid pro quo* sexual harassment, plaintiff must establish: 1) that he is a member of a protected class; 2) that he was subject to unwelcome sexual harassment; 3) that the harassment was sexually motivated; 4) that his reaction to the supervisor advances affected a tangible aspect of his employment; and 5) a basis for employer liability. Crowley v. L.L. Bean, 303 F.3d 387, 395 (1st Cir. 2002).

The court already held that Plaintiff was unable to establish that he was subject to unwelcome sexual harassment. In addition, Plaintiff stated in his deposition that Martinez was not above him in the organizational chart; and that his supervisors were Albino and Gonzalez. The fact that Martinez was not Plaintiff's supervisor remains uncontroverted. Plaintiff is unable to establish a *prima facie* case of *quid pro quo* sexual harassment. For this reason, the court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's *quid pro quo* sexual harassment claim.

### c.    Retaliation

In addition to the hostile work environment claim, Plaintiff claims that he was retaliated against after he filed a discrimination charge with the EEOC.

Title VII makes it unlawful for an employer to retaliate against a person who complains about discriminatory employment practices. See 42 U.S.C. § 2000e-3(a). It has been established in courts that "[j]udicial recourse under Title VII [...] is not a remedy of first resort." Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003). Therefore, an employee must first timely exhaust administrative remedies before presenting his or her Title VII claim in federal court. See Franceschi v. U.S. Dept. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008). The failure to exhaust the required administrative process, then, "bars the courthouse door." Id. at 85 (citing Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999)).

**Civil No. 10-1002 (GAG)**                        15

Even though Puerto Rico is a deferral jurisdiction and a plaintiff can file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred, the EEOC has not conferred the Antidiscrimination Unit in Puerto Rico with jurisdiction to hear claims for retaliation under Title VII. See Rodríguez Velázquez v. Autoridad Metropolitana de Autobuses, 502 F.Supp.2d 200, 208 (D.P.R. 2007); Alvarez v. Delta Airlines, 319 F. Supp.2d 240, 249 (D.P.R. 2004). "In such a case, claimant will have 180 days, not 300 days, from the alleged unlawful employment practice to file a charge of retaliation under Title VII with the EEOC". Id. See 42 U.S.C. § 2000e-5(e)(1).

Velázquez was terminated form his employment on August 25, 2008.  He filed his discrimination and retaliation charge before the EEOC on February 26, 2009. Therefore, his retaliation claim is time-barred inasmuch as he filed the retaliation charge before the EEOC 185 days after the last alleged retaliatory act, that is, his termination. As a result, Plaintiff did not timely exhaust remedies and thus is precluded from alleging a retaliation claim under Title VII.  Accordingly, summary judgment is **GRANTED** on Plaintiff's Title VII retaliation claim.

### 2.    Local Law Claims

Lastly, Defendants request that the court decline to exercise supplemental jurisdiction over the state law claims if the federal law claims are dismissed.  Plaintiff asserts several causes of action under the laws of the Commonwealth of Puerto Rico.  Specifically, she alleges claims under Puerto Rico Laws 17, 69, 100 and 80.

With the dismissal of federal claims against Defendant, there are no pending claims giving rise to federal jurisdiction.  12 U.S.C. § 1819(b)(2)(A).  As such, dismissal of pending state law claims is proper because an independent jurisdictional basis is lacking.  Exercising jurisdiction over pendent state law claims once the federal law claims are no longer present in the lawsuit is discretionary.  See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir .1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the

**Civil No. 10-1002 (GAG)**                    16

presence of at least one 'substantial' federal claim in the lawsuit . . . [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity[ ]").

In the instant case, the court chooses not to hear the state law claims brought by Plaintiff against Defendant with the exception of that under Law 17. This claim is summarily dismissed on the same grounds as Plaintiff's Title VII claim. As such, the court will enter judgment **DISMISSING WITHOUT PREJUDICE** Plaintiff's state law claims against Defendants under Laws 69, 80 and 100.**IV.       Conclusion**

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment at docket No.59. As discussed above, Plaintiff's local claims, with the exception of that under Law 17, are dismissed without prejudice.

**SO ORDERED**

In San Juan, Puerto Rico this 4th day of September, 2012.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge

**Civil No. 10-1002 (GAG)**                    17